## O'CARROLL et al. v. THE HAVRE.

(Circuit Court, E. D. Louisiana. April 6, 1891.)

1. SHIPPING—PASSENGERS—FAILURE TO FURNISH PROPER FOOD.

On libel by passengers against the master of a steam-ship for failure to furnish wholesome and proper food, equal in value to one and a half navy rations of the United States, as required by the passenger act, (U. S. St. 1882, c. 374, § 4,) libelants cannot recover if the evidence does not show the money or nutritive value of the provisions furnished, or that they were not equal in value to one and a half navy rations, though they may have been poor in quality.

2. SAME—BREACH OF CONTRACT.

In such action it appeared that, instead of furnishing the amount and quantity of food stipulated on the tickets, the master gave them unwholesome and insufficient provisions; that fresh water was not furnished them as agreed upon; that the water-closets for the female passengers were not decently arranged and inclosed, and were in a disgustingly filthy condition. For the insufficiency of the water-closets, the ship was convicted under the passenger act of 1882, and fined $250. Held, that damages should be allowed libelants, $50 to each for breach of contract as to provisions, and $50 additional to each female for breach as to water-closets.

In Admiralty.

The passenger act, (U. S. St. 1882, c. 374, § 4,) relating to the treatment of steam-boat passengers, provides that—

"An allowance of good, wholesome, and proper food, with a reasonable quantity of fresh provisions, which food shall be equal in value to one and a half navy rations of the United States, and of fresh water, not less than four quarts per day, shall be furnished each of such passengers. * * * If any any such passengers shall at any time during the voyage be put on short allowance for food and water, the master of the vessel shall pay to each passenger three dollars for each and every day the passenger may have been put on short allowance. * * * And for every willful violation of any of the provisions of this section the master of the vessel shall be deemed guilty of a misdemeanor, and shall be fined not more than five hundred dollars, and be imprisoned for a term not exceeding six months. The enforcement of this penalty, however, shall not affect the civil responsibility of the master and owners of the vessel to such passengers as may have suffered from any negligence, breach of contract, or default on the part of such master and owners."

T. J. Semmes, for claimant.

R. De Gray, for libelants.

PARDEE, J. The libelants, some 20 odd in number, alleging that they were steerage passengers on board the steam-ship Havre, on her voyage from the port of Antwerp, via Bordeaux, to the port of New Orleans, made between the 12th of January and the middle of February, 1890, for grounds of complaint against said vessel charge that the master and officers of said vessel, in violation of libelants' contract of passage, neglected, failed, and refused to furnish, without any just reason or cause, the libelants with proper or sufficient food, and such as they were entitled to under their contract, but, on the contrary, starved them, although said steam-ship had an .abundance of wholesome and sufficient food on board during the whole of the voyage; and, further, refused to furnish them with water-closets of the kind or character demanded by ordinary decency, and by the statutes of the United States, "whereby

they suffered hunger and want, thirst and starvation, to the great injury of their health and deprivation of their comfort, and to the damage of each of them one hundred dollars, ($100.00.)" They further charge that the said master and officers neglected, failed, and refused to furnish libelants, and each of them, an allowance of good, wholesome, and proper food, with a reasonable quantity of fresh provisions, equal in value to one and one-half navy rations of the United States, and without cause put them on short allowance; and that, when the libelants protested and petitioned said master and his officers for sufficient and wholesome food, their petition was denied, "whereby the said libelants, and each of them, during the entire time occupied by the aforesaid passage, suffered great discomfort, want, hunger, thirst, and starvation, to the great injury of their health and comfort;" and whereby, under the statutes of the United States, there became due from said steam-ship, her master and owners, three dollars per day to each passenger during said voyage. The answer is substantially a general denial. The evidence is voluminous and conflicting; a good deal of it is of that general character which is of little value in aiding the court to get at the exact facts in a case of this kind. A review or recapitulation would be lengthy and tedious, and is not deemed necessary for the purposes of this case. I have carefully read and considered it all, and the following is sufficient to show how I reach a decision:

1. The evidence does not satisfactorily establish that the value of the provisions actually served to the libelants, on the voyage aforesaid, was or was not equivalent to one and one-half navy rations of the United States. The evidence does not show the money value or the nutritive value of the provisions actually furnished. The articles composing the navy ration are different from those furnished and contracted to be furnished by the vessel in number, variety, and to some extent in kind, and no witness gives an intelligent comparison of the two. It is true that some few of the libelants give an estimate of the actual value of the provisions furnished, but their evidence partakes largely of the character of "guessing," and their estimates are of little value.

2. The evidence does not satisfactorily establish that the libelants, or any of them, at any time during the voyage, were put upon a short allowance of food and water, within the meaning of the statute, (section 4, Passenger Act 1882.) There was plenty of food and water, saying nothing as to quality, furnished the whole time of the voyage.

3. The evidence does establish that many of the articles of food contracted to be furnished, as shown by the tickets of passage, were not furnished and supplied in kind or by equivalents, particularly oatmeal, sugar, butter, and cheese; and that the provisions that were furnished were not always wholesome in quality, some of the articles being invariably bad. The regulations for the supply and distribution of food were such as to naturally cause dissatisfaction among the passengers. The breakfast, after a fast of 15 hours, consisted of a small cup of coffee, with a small piece of bread, wholly insufficient to satisfy a healthy, hungry passenger. Fresh bread and biscuits, the latter stale and wormy,

were served every day, probably sufficient as to quantity, both being ·considered, but the fresh bread was so much preferable to the sea-bis-·cuits the latter were rejected, and the passengers naturally thought that they were not supplied with a sufficiency of the former. With regard to fresh and salt beef, the service and supply were similar. The supply ·of dishes for both water and food was insufficient. The reserve supply ·of water could only be obtained by sucking in common through an iron pipe from a barrel on deck. The steward and baker and cook, who had immediate control of the furnishing, distributing, and cooking of the provisions served to the emigrant passengers, seemed to have an interest in creating and supplying a demand for extras and delicacies, and even necessaries, among the said passengers.

4. The water-closet for the female passengers was not decently arranged and inclosed, and during the voyage was generally in a disgustingly filthy condition.

It follows that the libelants cannot recover for and on account of being put upon short allowance, under the passenger act of 1882; nor for failure on the part of the master and officer to furnish provisions equivalent in value to one and one-half navy rations of the United States under the same statute; but that they may recover for breach of contract in not furnishing the quantity and quality of provisions actually contracted to be furnished; and the female libelants may recover for breach of contract in regard to water-closets. It appears that for the insufficient water-closets the ship has been convicted in a suit brought by the United States under the passenger act of 1882, and has been fined the stipulated penalty, ($250,) and this fact should be considered in determining the damages to be allowed here. On the whole, $50 for each libelant seems to be a proper allowance for damages on the breach of contract as to provisions, and $50 should be allowed to each female libelant for breach as to water-closets. A decree will therefore be entered giving each male libelant $50 damages, and each female libelant $100. The decree will carry costs of both courts.